# IN THE COURT OF APPEALS OF IOWA

———————————

No. 26-0001
Filed March 11, 2026

———————————

**In the Interest of B.A., G.A., and E.A., Minor Children,**

**A.H., Mother,**
Appellant.

———————————

Appeal from the Iowa District Court for Linn County,
The Honorable Cynthia S. Finley, Judge.

———————————

**AFFIRMED**

———————————

Robin L. O'Brien Licht, Cedar Rapids, attorney for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, attorneys for appellee State.

Annette Martin, Cedar Rapids, attorney and guardian ad litem for
minor children.

———————————

Considered without oral argument
by Ahlers, P.J., and Buller and Sandy, JJ.
Opinion by Ahlers, P.J.

1

**AHLERS, Presiding Judge.**

The juvenile court terminated the parental rights of a mother and father to their three children. The mother appeals. She challenges the statutory grounds for termination and whether termination of her parental rights is in the children's best interests. The father also filed a notice of appeal, but he failed to file a timely petition on appeal. The Iowa Supreme Court directed the father to file a statement explaining why it should grant him a delayed appeal. When the father did not comply, the supreme court dismissed his appeal. Although there is no appeal from the father before us, we will consider his parenting to the extent it impacts the mother's parenting as the two remain in a relationship and live together.

We review termination-of-parental-rights cases de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Although we are not bound by the juvenile court's factual findings, we give them respectful consideration, especially when assessing the credibility of witnesses. *Id.*

Our review follows a three-step process of determining whether statutory grounds for termination exist, whether termination is in the child's best interests, and whether an exception should apply to prevent termination. *Id.* at 294. But we do not address any step in this process that is not challenged on appeal. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

The juvenile court terminated the mother's rights to the oldest child pursuant to Iowa Code section 232.116(1)(f) (2025) and her rights to the two younger children pursuant to section 232.116(1)(h). These statutory grounds are similar. Both require the children to be previously adjudicated as in need of assistance and the court to find they could not be returned to the parent's custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(2), (f)(4), (h)(2), (h)(4). They differ only as to the age of the

child at issue and the length of time the child has been removed from the parent's custody. Paragraph (f) applies to a child four years of age or older who has been removed from a parent's custody for twelve of the last eighteen months, whereas paragraph (h) applies to a child three years of age or younger who has been removed from a parent's custody for six of the last twelve months. *Compare id.* § 232.116(1)(f)(1), (f)(3), *with id.* § 232.116(1)(h)(1), (h)(3). The mother only challenges the fourth element under each ground— whether the children could be safely returned to her custody at the time of the termination hearing. *See In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018) (interpreting "at the present time" as used in section 232.116(1)(h)(4) to mean at the time of the termination hearing); *In re R.M.-V.*, 13 N.W.3d 620, 626 (Iowa Ct. App. 2024) (using same interpretation of "at the present time" in section 232.116(1)(f)(4)).

After completing our de novo review of the record, we agree with the juvenile court that the children could not be safely returned to the mother's custody at the time of the termination hearing. First, the mother admitted in her testimony that the children could not be returned to her custody at the time of the hearing. Second, the key problem since the Iowa Department of Health and Human Services became involved with this family has not been fixed. That problem is the parents' inability to provide safe care and supervision for the children. We previously summarized the underlying facts of this family's history in a prior appeal brought by the father. They are as follows:

> In May 2023, a two-year-old daughter was briefly left alone and fell from a second story window—falling about fourteen feet and landing on cement. While receiving medical treatment, she tested positive for cocaine and THC. The father submitted a drug screen, which was positive for methamphetamine and THC. So the daughter and her younger brother were promptly removed from both parents' custody, placed in foster care,

3

and adjudicated in need of assistance. In September, the father and mother welcomed their third child—a baby boy—who remained in the parents' custody.

The father worked toward reunification with the two older children. He completed the SafeCare program, regularly attended visits, and abstained from using methamphetamine, though he continued to use marijuana. By March 2024, he progressed to multiple unsupervised overnight visits each week.

Yet the visits were later reduced after department social workers raised concerns that the children were not adequately supervised. For instance, the youngest son rolled off the couch and hit a coffee table when the mother left the room. Another time, the parents overlooked that the daughter and middle son were ill, delaying medical care for the daughter after she experienced a high fever for over twenty-four hours and never having the son examined despite him having strep and walking pneumonia.

After these concerns were raised, the father worked to get back on track. And in February 2025, he regained custody of the daughter and middle son.[1] But that was short-lived.

During the month that the children were returned to their father's custody, there were a number of close calls or instances of neglect due to inadequate supervision. The now-four-year-old daughter ingested THC—testing positive and requiring medical care after being lethargic and "difficult to wake up." The now-three-year-old middle son escaped out of a ground floor window. The home did not have functioning safety locks on the bathroom door or cabinets, leading to the daughter accessing a cabinet while the parents were sleeping, removing Epsom salts, and spilling them over her bedroom floor. On another date, the daughter and middle son filled the bathtub with water and the son got in, all without the parents knowing. And the youngest son suffered an unexplained skull fracture and was underweight.

---

[1] Although the mother and father lived together, the mother did not regain custody of the children.

> As a result, the State moved to modify the February dispositional order to remove all three children from the father's custody. After a contested hearing, the juvenile court agreed.

*In re B.A.*, No. 25-0729, 2025 WL 2238264, at *1–2 (Iowa Ct. App. Aug. 6, 2025) (footnote omitted). Since the most recent removal, the parents have only had fully supervised visits with the children. And the record contains no indication that the parents have gained critical parenting skills since that time.

For example, the parents purchased a pool for their home in the interim. When asked about it at the termination trial, the mother seemed to believe the pool would not pose a safety risk to the young children because she purchased it for her own use. The mother has borderline intellectual functioning, and she seemed unable to appreciate the danger that a pool would pose to young children. During cross-examination, the prosecutor asked the mother, "Do you understand that kids will put themselves in a situation, not because they're trying to be bad, but because they're curious, that could place them at risk; do you understand that?" The mother admitted, "No, not really."

In short, the mother cannot appreciate potential everyday dangers to the children and cannot protect them from those dangers. And, as previously noted, the mother agreed that the children could not be returned to her at the time of the termination hearing. We agree with the mother and the juvenile court that the children could not be safely returned to the mother's custody at the time of the termination hearing, establishing a statutory ground for termination.

The mother also challenges the juvenile court's determination that termination is in the children's best interests. She points to her bonds with

the children. When making a best-interests determination, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). With respect to best interests, we consider the parent-child bonds as they impact the children's "mental and emotional conditions and needs." *See In re L.A.*, 20 N.W.3d 529, 535 (Iowa Ct. App. 2025).

While we recognize the children share bonds with the mother, she simply cannot keep the children safe. And safety is foundational to the children's best interests. *See In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011). She cannot provide them with adequate care and supervision. And she continues to reside with the father, who poses his own safety risks to the children given his unresolved illegal substance use. Because the mother cannot provide the children with safe care, termination of her rights is in the children's best interests. Termination will allow the children to be adopted into safe homes in the future.

**AFFIRMED.**